JUDGE DAVID BRIONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED

UNITED STATES OF AMERICA,

      Plaintiff,

v.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**S E A L E D**
**I N D I C T M E N T**

2014 SEP 10 PM 5: 50

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                   DEPUTY

CRIMINAL NO. EP-14-CR-

CT 1:  18 U.S.C. § 1962(d); Conspiracy to
Conduct the Affairs of an Enterprise
through a Pattern of Racketeering
Activity;
CT 2:  18 U.S.C. § 1959(a)(1); Murder in
aid of racketeering activity;
CT 3:  21:846 & 841(a)(1)-Conspiracy to
Possess a Controlled Substance with
Intent to Distribute;
CT 4:  21:963-Conspiracy to Import
a Controlled Substance;
CT 5:  21:846 & 841(a)(1) & 841 (b)(1)(C) -
Conspiracy to Possess a Controlled
Substance with Intent to Distribute; and
CT 6:  18: 1956(h)- Conspiracy to Launder
Monetary Instruments.
CT 7: 18: 922(d)- Transfer of a Firearm to
a Prohibited Person.

EP 14 CR 1742

EDDIE MENDOZA (18)
aka: Raskal,

      Defendants.

THE GRAND JURY CHARGES:

**INTRODUCTION**

**THE RACKETEERING ENTERPRISE**
**The "Barrio Azteca" Enterprise**

 At all times relevant to this Indictment, in the Western District of Texas, and elsewhere, the defendants,

**EDDIE MENDOZA (18)**
**aka: Raskal,**

and others were members and associates of a criminal organization engaged in the importation of controlled substances, and possession with the intent to distribute controlled substances, murder, conspiracy to commit murder, extortion, robbery, money laundering, and assault. At all relevant times, this organization has operated in the Western District of Texas and elsewhere, and has been and is known as the Barrio Azteca(s) and will be referred to hereinafter in this indictment as the "Barrio Azteca" or "BA." The BA, including its leadership, membership, and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4) (hereinafter "the enterprise"), that is to say, a group of individuals associated in fact. The enterprise was engaged in, and its activities affected, interstate and foreign commerce. The enterprise constituted an on-going organization whose members functioned as a continuing unit for a common purpose of achieving the objects of the enterprise as further detailed below.

### Purposes of the Enterprise

The purposes of the enterprise included the following:

a. Enriching the members and associates of the enterprise through, among other things, importation and distribution of controlled substances, murder, assault, extortion, money laundering.

b. Preserving and protecting the power, territory, and profits of the enterprise through the use of intimidation, violence, threats of violence, assaults, and murder.

c. Promoting and enhancing the enterprise and its members' and associates' activities.

d. Keeping victims and others in fear of the enterprise and in fear of its members and associates through violence and threats of violence.

The BA has expanded its sphere of influence to include the Texas Department of Criminal Justice (TDCJ), the Federal Bureau of Prisons (BOP), and various cities in West Texas and Ciudad Juarez, Chihuahua, Mexico. The BA has also entered into an alliance with the Vicente Carrillo-Fuentes drug trafficking organization (VCFDTO) in Juarez, Mexico. As part of this alliance, BA members import, export and transport controlled substances, as well as conduct enforcement operations for the VCFDTO. The VCFDTO, in exchange, pays the BA for these services, or provides the BA with controlled substances at discount prices. The BA has further subdivided its enterprise and developed geographical groups to better serve the criminal aims of the organization. These groups include the cities of Juarez, Mexico and El Paso, Midland, and Odessa, Texas. Each of these geographical groups has some autonomy in deciding how it will achieve its criminal aims, but always within the framework and rules of the overarching BA criminal enterprise. The city of El Paso, Texas, is further subdivided into different subsections similar to the political subdivisions in the city, such as Central, Westside, Northeast, Eastside, Lower Valley, Segundo Barrio, Horizon, and Socorro.

In furtherance of the enterprise, BA members collect a street tax, also known as "cuota," "quota," "renta," or "taxes." The proceeds from the "cuota" are used to support members of the BA who are arrested, to pay for lawyers, bail bonds, fines, and any other fees associated with legal proceedings. The proceeds from the "cuota" are also used to purchase money orders, which are mailed through the United States Postal Service (USPS) to inmate accounts. The proceeds are also reinvested back into the BA enterprise activities for the purchase of assets, commodities, and other property related to the day-to-day function of the BA, including firearms, ammunition, and controlled substances.

**Manner and Means of the Enterprise**

**History and Hierarchy of the Enterprise**

The BA, also known as "Familia Azteca," was formed in 1986 by inmates located primarily in the TDCJ prison system. The purpose of the BA was to unite inmates that were native to the El Paso, Texas, and West Texas area. The original members of the BA created a charter or rules, also known as "sacred rules," which set out a command structure, or hierarchy of ranks and authority. These rules provide for a mechanism for promotion, demotion and replacement of ranking members within the BA. The BA leadership ranks are the following: The Capo Mayor, Captains, Lieutenants, Sergeants and Soldiers, the last also known as "indios." It is the responsibility of every soldier to carry out the orders of the ranking membership. BAs refer to one another as "carnal." A person wishing to join the BA is called a "prospecto," or "esquina."

**Rules of the Enterprise**

The original BA members developed a vocabulary, sacred rules, and chain of command. These rules direct BA members to be loyal, obey, protect, and serve the "family" as dictated by ranking members. New members are introduced to these rules by their "Padrinos," or individuals who serve as mentors for the new prospects entering the criminal enterprise. BA members are bound by a strict set of rules that ensure loyalty and participation in the enterprise's criminal activities. The rules require that a member must continue his participation in the organization after being released from prison. Membership is for life, and loyalty to the BA and its members takes precedence over any other relationship. A violation of the BA rules or orders may result in harsh penalties, including death. An order to carry out a punishment involving assault or murder is commonly referred to as a "green light" or "X." A "calentada" is a less

severe form of punishment involving some lesser form of assault.  The strict rules and harsh discipline governing the BA help insure that members and associates will function as a continuing unit, despite any changes in leadership or membership.

It is a common practice for some, but not necessarily all, BA members to have BA tattoos.  These tattoos commonly include the letters "B A" or "21" or the corresponding roman numeral "XXI," as a numerical representation of the letters "B" and "A."  Other tattoos include the numbers "915," a reference to the El Paso, Texas, area code, and "El Paso Texas."  Many BA members also obtain tattoos representing aspects of the ancient Aztec culture, such as Aztec warriors, calendars, and temples, among others.

The BA rules provide that loyalty to the BA or "Familia" is paramount and superior to loyalties to God, country, family, or friends.  All BA members are expected to know the rules of the BA and strictly abide by them.   It is understood that BA members may be chosen to undertake a particular task to discipline another BA member, including murder and other criminal activity.  The target of such an order may be a fellow BA, blood relative, friend, or other associate of the person who is given the order.   Regardless of the intended victim or the possible consequences, an order must be carried out by the BA member chosen for the task.   If the BA member does not carry out the task, typically referred to as a "Jale" or job, he will be subject to disciplinary action by the BA enterprise.

## Communications

BA members who are incarcerated throughout the United States and Mexico continue to participate in the operations of the BA criminal enterprise from their prison cells by communicating through letters, telephone calls, and prison visits with other BA members and associates, friends, and family members.  The BA leadership controls all BA members who are

incarcerated in the United States and Mexico, as well as those BA members operating outside the prison system, which BA members and associates sometimes refer to as the "free world."

The BA membership mails its directives using U.S. and Mexican postal services. The letters written by BA members are written in English, Spanish, or a combination of the two languages. These letters are sometimes called "kites" or "whilas." BA members will often utilize an individual as a conduit to receive or send letters from another BA member or associate. These conduits are called "bridges." The conduits will sometimes use fictitious names and addresses to send and receive letters and money orders to BA members who are incarcerated. The use of these conduits is intended to prevent law enforcement from finding out the identities of the true correspondents and the final destination of the letters.

BA members also use telephone communications to discuss BA enterprise affairs. BA members who are incarcerated coordinate telephone calls with BA members and associates to give out orders. The BA enterprise uses intrastate, interstate and foreign telephone communication facilities to further the affairs of the BA enterprise.

Coded language is frequently utilized in written and oral BA communications in order to mislead law enforcement as to the true message contained in the communication. The BA will also change the code or create transaction-specific codes to thwart law enforcement. Examples of BA coded language include "X'ed out" (former BA member), "green light" (authorization to assault or murder), and "tienda" (quota-paying associate). A BA member who has fallen out of favor might be referred to in the feminine tense or as an "X." The BA will also use pseudonyms or fictitious names and addresses in letters and during oral communications.

The BA holds meetings on a regular basis to discuss BA criminal enterprise business. These meetings typically call for the leadership or membership of a particular area or subdivision to attend. Some meetings will only be attended by key members or leaders. The frequency of these meetings is determined on an "as needed" basis. A meeting may be held to read and explain a letter from a captain giving the BA in the "free world" certain orders or directives.

## COUNT ONE
(RICO Conspiracy)
(18 U.S.C. § 1962(d))

The allegations set forth in the Introduction of this Indictment are hereby re-alleged and incorporated by reference as if fully set forth herein.

Beginning on or about August 1, 2010, and continuing thereafter, through and including on or about September 10, 2014, both dates being approximate and inclusive, within the Western District of Texas, and elsewhere, the defendants,

**EDDIE MENDOZA (18)**
**aka: Raskal,**

knowingly combined, conspired, confederated, and agreed together to violate Title 18, United

States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the

conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is

defined in Sections 1961(1) and 1961(5) of Title 18, United States Code, consisting of multiple

acts indictable under the following provisions of federal law:

       a.    18 U.S.C. §§1951 (extortion and conspiracy to commit extortion);
       b.    18 U.S.C. §§1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1956(h) (money
            laundering and conspiracy to commit money laundering);

and multiple acts involving the following provisions of state law:

       c.    Texas Penal Code §§19.02 (murder), 7.02(a)(2) (aiding and abetting), and
            15.02 (conspiracy);
       d.    Texas Penal Code §§ 31.02 and 31.03 (theft and extortion) 7.02(a)(2)
            (aiding and abetting), and 15.02 (conspiracy);
       e.    Texas Penal Code §§29.01 (robbery) 7.02(a)(2) (aiding and abetting), and
            15.02 (conspiracy);

and multiple acts involving the distribution of controlled substances, including heroin, in

violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846, 952(a), and 963.

It was further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## OVERT ACTS

It was further part of the conspiracy and as part of the manner and means of the enterprise and to affect the objects thereof, at least one of the conspirators herein agreed to commit two or more of the following overt acts, among others, in the Western District of Texas and elsewhere:

1.      In 2012,                                                                        began providing heroin to stores in Juarez, Mexico at the behest of

2.      On or about January 28, 2012, a Confidential Source (CS-10) imported 147.8 grams of heroin into the United States from Mexico. CS-10 received the heroin from
, in Juarez.
, was going to receive the heroin from CS-10 once she successfully crossed into the United States.

3.      On or about March 25, 2012                                      , murdered Raymundo Puga, by injecting heroin into Raymundo Puga, causing a heroin overdose, also known within the BA as a "hotshot".

4.      On or about August 1, 2012,
, sent a coded letter to a BA member who was incarcerated in the TDCJ Smith Unit, asking for clarification on whether or not          had been "parked".

5.      On or about August 9, 2012                                       told Confidential Source-3 (CS-3) that he was beaten up the night before for stealing quota money.

6.      On or about August 16, 2012,                                      , sold 12 "dimes" of heroin to CS-3.

7.      On or about August 24, 2012, Luis "Chuco" Fierro, who was running a larger area of El Paso and was viewed as a high ranking member of the BA was murdered along with his daughter's fiancé. Fierro's death caused a power shift and                          l, took over running BA operations for El Paso.

8.      On or about November 6, 2012, an                                             , and other members of the BA enterprise held a meeting at a bar known as the "office". Members discussed "quota" collection.

9.      On or about November 30, 2012, an enterprise meeting was held at the house of                                  , attended by

,                                  ,                                  ,

and other members of the enterprise. A "calentada" was carried out at this meeting.

10.     On or about December 17, 2012, CS-1 collected quota money from a BA member. That member brought an individual who was selling cocaine.          , had CS-1 place        on speaker phone and reminded the individual that the individual had to pay quota. The BA member then displayed a firearm.

11.     On or about February 19, 2013, CS-3 met with                               to write a coded letter to an incarcerated BA member.

12.     On or about February 21, 2013, a BA enterprise meeting was held and                                    , EDDIE MENDOZA a.k.a. Raskal,                                       , and other BA members attended. The group discussed retaliation on members of a rival gang, the "Surrenos".

13.     On or about April 2, 2013, CS-9 purchased heroin from

14.     On or about April 5, 2013, CS-1 purchased cocaine from

15.     On or about April 10, 2013, CS-8 purchased cocaine from

16.     On or about April 24, 2013,                              directed CS-1 to use quota money to purchase money orders for four incarcerated BA members.

17.     On or about May 8, 2013,                              , directed CS-1 to use quota money to purchase money orders for four incarcerated BA members.

18.     On or about May 19, 2013, a BA leadership meeting was held. Present were

,                                    ,                                    ,

,                                    , and other

members.                                    called and was placed on speaker phone.

stated that                                    and

were selling a lot of drugs. Several issues were discussed, but the main discussion was the collection of "quota", opening more drug stores and discipline of BA members who were not in good standing.

19.     On or about May 22, 2013,                              directed CS-1 to use quota money to purchase nine money orders for incarcerated BA members.

20.     On or about July 23, 2013, CS-2 received quota money from

21.    On or about August 6, 2013, CS-2 turned over all the quota money collected for El Paso to                              and

                              then called

and reported the amount.

22.    On or about October 6, 2013, a BA meeting was held between

                              ,                              ,

                              and other BA members.                              called

and ordered a "calentada" on a member who refused to pay quota.

23.    On or about October 23, 2013, CS-2 purchased heroin from

24.    On or about May 6, 2014, CS-3 received heroin from

                              , with instructions to mail it to an address in Georgia so that the heroin could

be delivered to incarcerated BA members.

## NOTICE OF SPECIAL SENTENCING FACTORS

On or about March 26, 2012, in the Western District of Texas and elsewhere, the

defendant,                              , intentionally or knowingly caused

the death of Raymundo Puga a.k.a. Flaco, a member of BA enterprise, in violation of Texas

Penal Code §§19.02(b)(1), 7.02(a)(2) and 15.02.

On or about August 1, 2010 continuing through and including on or about September 10,

2014  in the Western District of Texas and elsewhere, the defendants,

                              ,                              ,

                              ,

                              ,                              ,

, EDDIE MENDOZA (18) aka:

Raskal,                                              , and

, knowingly, intentionally, and unlawfully conspired, combined, confederated, and

agreed together, and with each other, and with others to the Grand Jury unknown, to commit

offenses against the United States, in violation of Title 21, United States Code, Section 846, that

is to say, they conspired to possess a controlled substance, which offense involved one kilogram

or more of a mixture or substance containing a detectable amount of heroin, a Schedule I

Controlled Substance, with intent to distribute same, contrary to Title 21, United States Code,

Section 841(a)(1).

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO
### (Murder of Raymundo Puga a.k.a. Flaco)
### (18 U.S.C. 1959(a)(1))

At all times relevant to this Indictment, the Barrio Azteca, as more fully described in the

Introduction of this Indictment, which is re-alleged and incorporated by reference as though set

forth fully herein, constituted an enterprise as defined in Title 18, United States Code, Section

1959(b)(2), that is, a group of individuals associated in fact which was engaged in, and the

activities of which affected, interstate and foreign commerce.  The enterprise constituted an

ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

At all times relevant to this Indictment, the above-described enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder in violation of Texas Penal Code §§19.02, 7.02(a)(2), and 15.02 (murder, aiding and abetting, and conspiracy), Texas Penal Code §§ 31.02 and 31.03, 7.02(a)(2), and 15.02 (theft and extortion, aiding and abetting, and conspiracy), and Texas Penal Code §29.01, 7.02(a)(2), and 15.02 (robbery, aiding and abetting, and conspiracy); narcotics trafficking in violation of Title 21, United States Code, Sections 841, 846, 952(a) and 963; and acts indictable under Sections 1951 (extortion) and 1956 (money laundering) of Title 18, United States Code.

On or about March 26, 2012, in the Western District of Texas, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the BA, and for the purpose of gaining entrance to and maintaining and increasing position in the BA, an enterprise engaged in racketeering activity,

the defendant with others known and unknown to the Grand Jury, unlawfully and knowingly murdered Raymundo Puga a.k.a. Flaco, in violation of Texas Penal Code §19.02(b)(1).

All in violation of 18 U.S.C. 1959(a)(1) and 2.

## COUNT THREE
(21 U.S.C. §§ 846 & 841(a)(1))

That from on or about August 1, 2010, and continuing through and including on or about September 10, 2014, in the Western District of Texas, Defendants,

knowingly, intentionally, and unlawfully conspired, combined, confederated, and agreed together, and with each other, and with others to the Grand Jury known and unknown, to commit offenses against the United States, in violation of Title 21, United States Code, Section 846, that is to say, they conspired to possess a controlled substance, which offense involved a mixture or substance containing a detectable amount of heroin, a Schedule I Controlled Substance, with intent to distribute same, contrary to Title 21, United States Code, Section 841(a)(1) in the quantities set forth below.

### QUANTITY OF CONTROLLED SUBSTANCE INVOLVED IN THE CONSPIRACY

The quantity of the mixture or substance containing heroin involved in the conspiracy and attributable to each Defendant as a result of each Defendant's own conduct and as a result of the conduct of other conspirators reasonably foreseeable to each Defendant is as follows:

| DEFENDANT | QUANTITY | STATUTE |
|---|---|---|
| | 1 kilogram or more | 21 U.S.C. § 841(b)(1)(A)(i) |
| | 1 kilogram or more | 21 U.S.C. § 841(b)(1)(A)(i) |
| | 1 kilogram or more | 21 U.S.C. § 841(b)(1)(A)(i) |
| | 1 kilogram or more | 21 U.S.C. § 841(b)(1)(A)(i) |
| | 100 grams or more | 21 U.S.C. § 841(b)(1)(B)(i) |
| | 100 grams or more | 21 U.S.C. § 841(b)(1)(B)(i) |
| | 1 kilogram or more | 21 U.S.C. § 841(b)(1)(A)(i) |

All in violation of Title 21, United States Code, Section 846.

**COUNT FOUR**
(21 U.S.C. §§ 963, 952(a) & 960(a)(1))

That from on or about August 1, 2010, and continuing through and September 10, 2014, in the Western District of Texas, Defendants,

knowingly, intentionally, and unlawfully conspired, combined, confederated, and agreed together, and with each other, with others to the Grand Jury known and unknown, to commit offenses against the United States, in violation of Title 21, United States Code, Section 963, that is to say, they conspired to import a controlled substance, which offense involved a mixture or substance containing a detectable amount of heroin, a Schedule I Controlled Substance, into the United States from Mexico, contrary to Title 21, United States Code, Sections 952(a) and 960(a)(1) in the quantities set forth below.

## QUANTITY OF CONTROLLED SUBSTANCE INVOLVED IN THE CONSPIRACY

The quantity of the mixture or substance containing heroin involved in the conspiracy and attributable to each Defendant as a result of each Defendant's own conduct and as a result of the conduct of other conspirators reasonably foreseeable to each Defendant is as follows:

| DEFENDANT | QUANTITY | STATUTE |
|---|---|---|
| | 1 kilogram or more | 21 U.S.C. § 960(b)(1)(A) |
| | 1 kilogram or more | 21 U.S.C. § 960(b)(1)(A) |
| | 1 kilogram or more | 21 U.S.C. § 960(b)(1)(A) |
| | 1 kilogram or more | 21 U.S.C. § 960(b)(1)(A) |
| | 100 grams or more | 21 U.S.C. § 960(b)(2)(A) |

All in violation of Title 21, United States Code, Section 963.

### COUNT FIVE
(21 U.S.C. §§ 846 & 841(a)(1))

That from on or about August 1, 2010, and continuing through and including on or about September 10, 2014, in the Western District of Texas, Defendant,

knowingly, intentionally, and unlawfully conspired, combined, confederated, and agreed together, and with each other, and with others to the Grand Jury known and unknown, to commit offenses against the United States, in violation of Title 21, United States Code, Section 846, that is to say, they conspired to possess a controlled substance, which offense involved a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, with intent to distribute same, contrary to Title 21, United States Code, Section 841(a)(1) in the quantities set forth below.

## QUANTITY OF CONTROLLED SUBSTANCE INVOLVED IN THE CONSPIRACY

The quantity of the mixture or substance containing cocaine involved in the conspiracy and attributable to each Defendant as a result of each Defendant's own conduct and as a result of the conduct of other conspirators reasonably foreseeable to each Defendant is as follows:

| DEFENDANT | QUANTITY | STATUTE |
|---|---|---|
|  | a quantity | 21 U.S.C. § 841(b)(1)(C) |
|  | a quantity | 21 U.S.C. § 841(b)(1)(C) |

All in violation of Title 21, United States Code, Section 846.

### COUNT SIX
(18 U.S.C. §§1956(a)(1)(A)(i) & (B)(i) & (ii) & (h))

That beginning on or about August 1, 2010,  and continuing through and including on or about September 10, 2014, in the Western District of Texas, and elsewhere, Defendants,

**EDDIE MENDOZA (18)**
**aka: Raskal,**

did intentionally and knowingly combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, knowing that the property involved in such financial transactions represented the proceeds of some form of unlawful activity, such property being, in fact, the proceeds of a specified unlawful activities, to wit: conspiracy to possess with the intent to distribute a controlled substance in violation of 21 U.S.C. §846 and extortion and conspiracy to commit extortion in violation of 18 U.S.C. §§1951 and 371:

a. with the intent to promote the carrying on of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

b. knowing that the transactions were designed in whole or in part to conceal and disguise the nature, the source, the ownership, and the control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT SEVEN

(18 U.S.C. §922(d))

That beginning on or about February 13, 2013, in the Western District of Texas, Defendant,

knowingly disposed of, provided a firearm to, or sold a firearm that is a 9mm handgun serial number BF19327, Model number FEG to another person knowing and having reasonable cause

to believe that said person had been convicted of a crime punishable by imprisonment for a term

exceeding one year in violation of Title 18, United States Code, Sections 922(d) and 924(a)(2).

A TRUE BILL.

ORIGINAL SIGNATURE
REDACTED PURSUANT TO
E-GOVERNMENT ACT OF 2002

FOREPERSON OF THE GRAND JURY

ROBERT PITMAN
UNITED STATES ATTORNEY

BY: _____
Michael R. Whyte
Assistant U.S. Attorney